**NOT FOR PUBLICATION IN WEST'S HAWAIʻI REPORTS AND PACIFIC REPORTER**

**Electronically Filed**
**Intermediate Court of Appeals**
**CAAP-24-0000821**
**23-OCT-2025**
**08:01 AM**
**Dkt. 53 SO**

NO. CAAP-24-0000821

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

IN THE INTEREST OF B.Z., L.Z., E.Z., A.Z., R.Z.1, and R.Z.2

APPEAL FROM THE FAMILY COURT OF THE THIRD CIRCUIT
(CASE NO. FC-S 21-0044)

### SUMMARY DISPOSITION ORDER
(By: Nakasone, Chief Judge, Leonard and Guidry, JJ.)

Mother-Appellant (**Mother**) appeals from the November 22, 2024 "Order Terminating Parental Rights" (**Termination Order**), entered by the Family Court of the Third Circuit (**family court**).[1]  The Termination Order terminated Mother's and Father's[2] respective parental rights to their minor children B.Z., L.Z., E.Z., A.Z., R.Z.1, and R.Z.2 (collectively, the **Children**).

Mother appears to raise two points of error on appeal, contending that: (1) Petitioner-Appellee Department of Human

---

[1]  The Honorable Jeffrey W. Ng presided.

[2]  Father is a nominal appellee to this appeal.

Services (**DHS**) "failed to establish by clear and convincing evidence that Mother is not willing and able to provide a safe family home for her children even with the assistance of a service plan or in the foreseeable future"; and (2) DHS' "Permanent Plan with the goal of adoption to current resource caregiver is not in the Children[']s best interest." (Capitalization altered.)  In conjunction with these contentions, Mother challenges Findings of Fact (**FOFs**) 17, 28, 29, 30, 48, 59, 60, 61, 65, 66, 67, 68, 70, and 71, and Conclusions of Law (**COLs**) 9, 10, 11, and 12.

Upon careful review of the record, briefs, and relevant legal authorities, and having given due consideration to the arguments advanced and the issues raised by the parties, we resolve Mother's points of error as follows:

(1) Mother contends that the family court erred by finding, by clear and convincing evidence, that Mother was not presently, nor in the reasonably foreseeable future, willing and able to provide the Children with a safe family home, even with the assistance of a service plan.

Hawaii Revised Statutes (**HRS**) § 587A-33(a) (2018) governs the termination of parental rights, and provides, in relevant part:

> (a)  At a termination of parental rights hearing, the court shall determine whether there exists clear and convincing evidence that:

> (1)     A child's parent whose rights are subject to
>         termination is not presently willing and able
>         to provide the parent's child with a safe
>         family home, even with the assistance of a
>         service plan;
>
> (2)     It is not reasonably foreseeable that the
>         child's parent whose rights are subject to
>         termination will become willing and able to
>         provide the child with a safe family home, even
>         with the assistance of a service plan, within a
>         reasonable period of time, which shall not
>         exceed two years from the child's date of entry
>         into foster care[.]

"DHS is under an obligation to provide a reasonable opportunity to parents through a service plan to reunify the family." In re Doe, 100 Hawai'i 335, 343, 60 P.3d 285, 293 (2002) (citations omitted). However, "generally, the family court possesses wide discretion in making its decisions and those decisions will not be set aside unless there is a manifest abuse of discretion." In re R Children, 145 Hawai'i 477, 482, 454 P.3d 418, 423 (2019) (cleaned up).

At the time the family court terminated Mother's parental rights, the Children had been in foster custody for 39 months from their date of entry into foster care. See In re J.H., 152 Hawai'i 373, 379, 526 P.3d 350, 356 (2023) ("Parents have two years from a child's entry into foster custody to become willing and able to provide a safe family home.") The family court's unchallenged FOFs[3] show that Mother did not fully

---

[3]     "Unchallenged [FOFs] are binding on appeal." In re J.M., 150 Hawai'i 125, 137, 497 P.3d 140, 152 (2021) (citation omitted).

3

participate in and comply with her court-ordered service plan during this time. Specifically, Mother did not start Comprehensive Counseling Support Services (**CCSS**) through P.A.R.E.N.T.S., Inc., and she "failed to start any kind of individual therapy." The family court found that "[i]ndividual therapy and CCSS would have helped [M]other gain some insight into her parenting issues, help her build and, eventually, demonstrate parenting skills." The family court further found that, "Mother was not willing to learn and grow in her group therapy sessions with her Children and, as a result, has little to no insight of her recurring parenting issues."

The family court made additional unchallenged FOFs that "Mother was inconsistent with visits and therapy" with the Children. Mother failed to appear and/or cancelled nine of the scheduled weekly visits with the Children, held via Zoom,[4] between March 2024 and November 2024. Of the monthly in-person visits that were scheduled between April 2024 and October 2024, Mother missed her May and October visits, and arrived late to her June and July visits. From August 21, 2024 to November 14, 2024, Mother failed to appear and/or cancelled three of her weekly group therapy sessions with the Children. The family court found that "[t]he Children described their therapy

---

[4] The record reflects that Mother moved to California while the Children were in foster custody, and that Mother's visitation with the Children consisted of weekly Zoom sessions and monthly in-person visits.

sessions with Mother as a waste of time because Mother was not willing to listen to them."  When Mother attended visits and therapy sessions with the Children, she "was often angry and preoccupied with blaming [DHS] and/or the Children for the reasons why this case was not progressing to family supervision."  As a result, "the Children started to resent and dread Mother's visits and therapy sessions," and "[t]he Children supported [DHS'] decision to terminate parental rights."

The above unchallenged FOFs are supported by substantial record evidence.  At the September 20, 2024 termination of parental rights hearing, the DHS social worker assigned to the Children's case[5] testified that Mother was non-clinically discharged from CCSS counseling due to "[n]on-engagement," and that Mother had not complied with her individual therapy requirement.  The DHS social worker explained that "CCSS is meant to be a tool for [Mother]" and a service that "goes hand in hand with skill building visits" in which Mother "would have been able to demonstrate that she is able to provide a safe family home for her children."  Individual therapy was important to help Mother "work through [her] anger" as Mother "gets frustrated with the kids quickly" and "has expressed a lot of anger."

---

[5]    The family court's finding that the DHS social worker was a credible witness is unchallenged on appeal.

With regard to visitation, the DHS social worker testified that during a February 2024 Zoom call, Mother "was seen . . . hiding from her friend's boyfriend," and therefore "not engaging with her children."  Mother's subsequent Zoom visits with the Children were "inconsistent," and Mother also missed several in-person visits with the Children.[6]  The DHS social worker observed that, during the supervised in-person visits between Mother and the Children, "[t]he [C]hildren [were] very disconnected with [Mother]," that "[Mother had] a hard time keeping [the Children] engaged," and "[t]he [C]hildren would rather play with each other than with [Mother]."

The DHS social worker testified that she felt it was not reasonably foreseeable that Mother would become willing and able to provide a safe family home within a reasonable period of time, even with the assistance of a service plan.  The DHS social worker explained that this was: "Because the [C]hildren have been in out-of-home placement for over three years.  Mom has had three years to complete the service plan.  But she continues to be inconsistent with her visits and with CCSS counseling."  The DHS social worker further explained that, "[t]hese [C]hildren, they deserve permanency and stability.  They deserve to have long term placement.  And that with them

---

[6]     The DHS social worker further testified, at the November 22, 2024 continued hearing on termination of parental rights, that Mother also missed her scheduled October 2024 in-person visit.

not having this placement . . . it can affect them and their well-being, and their lifestyle and their want to have permanency."

On this record, we conclude that the family court did not clearly err in finding clear and convincing evidence that Mother was not presently, nor in the reasonably foreseeable future, willing and able to provide the Children with a safe family home. We conclude that the FOFs challenged by Mother are not clearly erroneous, and that the COLs challenged by Mother are not wrong.[7]

(2) Mother contends that the family court erred in concluding that DHS' permanent plan, which set forth the goal of adoption to the current resource caregivers, was not in the Children's best interest. HRS § 587A-33 states, in pertinent part,

> (a) At a termination of parental rights hearing, the court shall determine whether there exists clear and convincing evidence that:
>
> . . . .
>
>> (3) The proposed permanent plan is in the best interests of the child. In reaching this determination, the court shall:
>>
>>> (A) Presume that it is in the best interests of the child to be promptly and permanently placed with responsible and competent substitute parents and family in a safe and secure home; and

---

[7] FOFs 59, 60, 61, 65, 70, and 71, and COLS 9 and 10, relate specifically to Mother's present and future willingness and ability to provide the children with a safe family home, even with the assistance of a service plan.

       (B)      Give greater weight to the presumption
                  that the permanent plan is in the child's
                  best interest, the younger the child is
                  upon the child's date of entry into
                  foster care[.]

Mother makes no argument on this point other than to contend that it would be "in the [C]hildren['s] best interests to be reunified with [Mother]." On this record,[8] and in light of our discussion in section (1), supra, Mother's contention lacks merit. We conclude that the challenged FOFs are not clearly erroneous, and the challenged COLs are not wrong.[9]

We therefore affirm.

DATED: Honolulu, Hawaiʻi, October 23, 2025.

On the briefs:

Martin H. Bento,
for Mother-Appellant.

Julio C. Herrera,
Kimberly Angay,
Deputy Attorneys General,
for Petitioner-Appellee.

/s/ Karen T. Nakasone
Chief Judge

/s/ Katherine G. Leonard
Associate Judge

/s/ Kimberly T. Guidry
Associate Judge

---

[8] The DHS social worker testified that adoption was in the best interest of the Children because "[a]doption will give the [C]hildren stability, permanency and long term placement." The family court made unchallenged FOFs that the Children's respective resource caregivers "are willing and able to adopt them and be their forever home[s]," the resource caregivers are "safe and appropriate," that "[t]he Children are doing well in their current placements and all of the Children's physical, medical, emotional, and psychological needs have been met in their respective placements," and "[t]he Children are bonded with their current caregivers and their respective placements are in their best interests."

[9] FOFs 66, 67, and 68, and COLs 11 and 12, relate specifically to the permanent plan.